Christopher J. Baum
**BAUM & BAILEY, P.C.**
*Proposed Co-Counsel to the Debtor-in-Possession*
48 Wall Street, 11th Floor,
New York, New York 10005
Telephone:    (212) 918-4519
Facsimile:    (718) 228-3979
cbaum@baumbaileylaw.com

-and-

Jeb Singer
**J. SINGER LAW GROUP, PLLC**
*Proposed Co-Counsel to the Debtor-in-Possession*
*Pro Hac Vice Admission Pending*
222 Broadway, 19th Floor
New York, New York 10038
Telephone:    (917) 806-5832
jsinger@singerlawgroup.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| NATIONAL SPORTS ACADEMY AT LAKE PLACID | Case No. 15-10082-REL |
| Debtor. | |
| Tax ID: 22-2627071 | |

### DEBTOR'S CERTIFICATION PURSUANT TO LOCAL RULE 2015-2

Lisa Wint, certifies the following:

      1.      I am the Head of School for National Sports Academy at Lake Placid ("Debtor"), a private, not-for-profit school located in Lake Placid, New York, the Debtor and debtor-in-possession, in the above captioned case filed under chapter 11 of Title of 11 of the United States Code (the "Bankruptcy Code").

1

2. I submit this certification pursuant to Rule 2015-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court").

**The Debtor's Operations and Factors Precipitating the Chapter 11 Case**

3. The Debtor is a private, non-profit secondary school in Lake Placid formed as a non-profit pursuant to section 501(c)(3) of the Internal Revenue Code by application to the New York State Board of Regents, specializing in the education and training of elite winter athletes.

4. The School has experienced financial difficulty from unfortunate management (amongst the prior Board of Directors and the officers) and mounting debt obligations. This resulted in low enrollment and the loss of our once proud women's hockey team. Currently, we have one boys' hockey team and only two individual other athletes.

5. Our current total enrollment is twenty (20) students, which is down from sixty (60) or more students just three (3) years ago.

6. Traditionally, we had both a male and female hockey program, twenty (20) alpine athletes and ten (10) other individual sports athletes in sports such as luge, Nordic skiing, freestyle skiing, figure skating, speed skating, etc.

7. Due to our financial difficulties we have deferred our renowned alpine sports program because, without economies of scale (i.e., ten or more student athletes), the program costs would be prohibitive for participants.

8. In the middle of the 2012/2013 school year, the prior Board of Directors of the Debtor announced its intention to immediately close due to a lack of sufficient funds.

9. At that point a new Board of Directors replaced the existing one, including two members of the current Board of Directors. A third current Board member joined subsequently

in 2014.

10. The Board of Directors proceeded to successfully raise eight hundred thousand ($800,000.00) with two of the current Board members making significant donations between December, 2012 and January, 2013.

11. The Debtor also began exploring alternative revenue sources such as a new recreational program, renting out lodging, and has produced alternative revenue this fall with greater opportunities ramping up this winter and into the summer.

12. In addition, the Debtor anticipates being assisted by several local initiatives including the Town of North Elba's comprehensive plan (July, 2014) aimed to assure that Olympic facilities and sports venues meet the highest international standards.

13. At the beginning of the current school year, the Debtor once again considered not reopening. After long deliberation, the Debtor decided to reopen because we strongly believe in our mission and know that our students benefit greatly from the unique balance of academic and athletic offerings at the school. The students would be ill served to have to enroll in another institution in the middle of their high school career. This would be especially difficult for international students that compromise approximately forty percent (40%) of our enrollment.

14. I became the interim head of school at the end of July, 2014, and have since been appointed as the Head of School.

15. By the end of the first semester of the current school year, the Debtor found itself with insufficient cash on hand to pay its operating expenses through the end of the school year.

16. At that point, we endeavored to raise money to finance operating expenses via donations from the school community, parents, alumni, and other supporters. The Debtor was successful in raising this amount in just over three (3) weeks. The school received one hundred

percent (100%) participation of the members of the Board as well as the faculty, staff, and current families.

17. The School was successful at raising the money and therefore made the decision to remain open through May 2015 while we work to increase the enrollment for the 2015-2016 school year to considerably more viable numbers.

18. Additionally, the Debtor has enrolled three new students in the past few weeks.

19. The Debtor has made the decision to file for protection under Chapter 11 of the Bankruptcy Code after carefully and extensively considering its strategic alternatives with the assistance of outside advisors. The decision was made to stay open while effectuating a turn around, pushing forward with recruiting efforts and restructuring our balance sheet.

20. This case has been filed as a Chapter 11 case and there are no committees organized prior to the order for relief.

A. **Bankruptcy as Part of an Ongoing Effort to Turnaround Performance**

21. Since 2012, in efforts to address its problems, the School has appointed a new Board of Directors, hired myself as Head of School and hired a highly regarded boys' hockey coach who has found ways to make operations extremely financially efficient.

22. We are in the process of hiring a fantastic new girls' hockey coach. These new coaches are going to be directly responsible for recruiting, developing, and training their respective teams. They also are responsible for recruiting players for the next year thereby expanding enrollment and increasing revenue.

23. The Debtor has chosen to file for protection under Chapter 11 of the Bankruptcy Code in order to address balance sheet issues, obtain breathing room from creditors and formulate a plan of reorganization that will enable the Debtor to successfully operate its school

in the future.

**B.    Lawsuits and Tax Liabilities.**

24.    The Debtor is a party to several litigation matters. Most pertinently, the Debtor was sued by John Peracchio (a former Board member who previously lent money to the school and whose loan comes due this month) in New York State Supreme Court, County of Albany.

25.    The Debtor was also sued by Kabrual Tasha and Julie Tasha in the Superior Court of the Commonwealth of Massachusetts, County of Barnstable.

26.    Each of those litigation matters are currently pending.

27.    The Debtor also has past federal tax liabilities for unpaid withholding taxes of approximately fifty-eight thousand, seven hundred twenty-four dollars and fifty-one cents ($58,724.51). In late November, 2014, the Debtor entered into a settlement with the IRS and entitling it to pay taxes in installments at a rate of one thousand, two hundred dollars ($1,200.00) per month.

28.    The Debtor intends to assume this contract and continue to service this contract and satisfy its past federal tax liabilities.

**C.    Current Liabilities.**

29.    The Debtor's twenty largest unsecured claims are included hereto as Exhibit A.

**D.    Review of Filing Documents.**

30.    The Debtor's proposed counsel has advised me of the responsibilities and obligations of a debtor-in-possession under Chapter 11 of the Bankruptcy Code.

31.    I have reviewed the petition, schedules and other filing documents with the proposed counsel to the Debtor. I have reviewed the creditors' list and matrix with the Debtor's

bookkeeper. All of the information presented therein is complete and accurate to the best of my information, knowledge, and belief.

32. I have also reviewed, with counsel, the Debtor's mortgage documents. It does not appear that the Debtor has pledged any cash collateral. The Debtor will pay for its ongoing operations with cash in the ordinary course of business. The Debtor is not requesting permission to use cash collateral at this time. Should the Debtor later determine that it has, in fact, pledged cash collateral and needs to use the same, it will move for authority to utilize cash collateral at that time.

33. The Debtor does not presently believe that it will need a debtor-in-possession loan in order to fund its operations. Should the Debtor determine that such a loan is necessary, the Debtor will move for authority to enter into such an agreement.

34. I am aware that we are filing several "first day motions" seeking various relief necessary to enable the Debtor to continue to operate and minimize interruptions. I have reviewed these motions and the proposed orders and I have discussed them with the Debtor's proposed counsel. I believe that each of these motions is necessary to the Debtor's operations.

35. Wages Motion: the Debtor currently has twelve (12) individuals on payroll. Its bi-weekly payroll is fifteen thousand, one hundred one and seventeen cents ($15,101.17). The Debtor withholds four thousand one hundred forty-six dollars and ten cents ($4,146.10) for various federal taxes. We also contribute eight hundred two dollars and seventy-four cents ($802.74) to employee benefit plans and the Employees sets aside one thousand, forty-one dollars and thirty-one cents ($1,041.31) in social security and medicare.

36. The Debtor currently owes one week's worth of payments totaling

- Wages: $15,101.17.

- Withholding taxes: $4,146.10.

- Employee benefit plans: $802.74.

- Social security and medicare: $1,041.31.

37. In addition, the Debtor also utilizes the services of Colleen Burnham of Mountain Bookkeeping. Her services to the school are absolutely essential to ongoing operations. She is paid twenty-five dollars ($25.00) per hour for her services. She is paid biweekly, but the Debtor does not withhold on her behalf. The Debtor does not exercise dominion and control over her and therefore she is not on payroll. The Debtor is current on its obligations to Mountain Bookkeeping having paid in the ordinary course of business.

38. I have reviewed the Wages Motion and proposed order and I request that the Court sign this Order.

39. Utility Motion: I am aware that the Debtor has moved for an order prohibiting utility services providers from interrupting with services over the first twenty (20) days of the case. The Debtor intends to pay all utility service providers for post-petition services, and the Debtor asserts that the Utilities are receiving adequate assurance of future payments.

40. Therefore, the Debtor requests that the Court enter this Order.

41. Critical Vendors Motion: I am aware that the Debtor is filing a motion requesting to pay certain prepetition creditors. Each of these creditors provides valuable services to the Debtor and each has expressed that they will not continue to provide such services if they are not paid their prepetition claims. Each of these services is necessary to the Debtor's effective reorganization. These creditors are:

> Athlete School Advisor AB (Recruiting)
> Kungsporten 3A, 427 50
> Billdal, Sweden, Foretaget innehar F-skattesedel

        Olympic Regional Development Authority
        2634 Main Street,
        Lake Placid, NY  12946

        Strack, LLC
        d/b/a Central Garage (Vehicle Fuel and Maintenance)
        2679 Main Street,
        Lake Placid, NY 12946

42.    Athlete School Advisor AB ("ASA") provides recruiting services to the Debtor on a commission basis.  It has been highly successful in recruiting students to the school and helping the school generate revenue.  Recruiting and increasing enrollment is crucial to the Debtor's turnaround efforts and ASA's assistance will be needed on a going forward basis.  ASA is owed $6,500.00.

43.    Olympic Regional Development Authority provides our hockey team with use of the rink and locker rooms at the famed Olympic Hockey Center.  The opportunity to pay home games at that rink is a huge part of the allure for hockey players to attend NSA.  If NSA did not maintain this relationship, it would essentially guarantee liquidation.  ORDA is owed forty-one thousand, one hundred nine dollars and seventy-two cents ($41,109.72).

44.    Strack, LLC provides crucial services to the Debtor's heavily used vehicles.  These services are not readily available elsewhere.  Any alternative provider will be located a great distance from the school and the Debtor cannot have the assurance that it will receive quality services.  Obviously if anything goes wrong with the Debtor's vehicles, this can lead to extensive costs.  Therefore, it is critical that the Debtor be able to continue to utilize the services of Strack.  They are owed eight thousand, seven hundred nineteen dollars and fifty-two cents ($8,719.52).  The Debtor has been paying the garage on a seven hundred fifty dollars ($750) per month payment plan.

45. I am also aware that the Debtor will be filing a retention application (the "<u>Retention Application</u>") proposing to retain the services of Baum and Bailey, P.C. and the J. Singer Law Group, PLLC as co-counsel to the Debtor in this bankruptcy case.

46. Each of these firms has been retained by the Debtor and has provided ongoing legal services to the Debtor. I am aware that they will be splitting fees in accordance with the amount of legal services rendered.

47. I have been advised that, pursuant to the Federal Rules of Bankruptcy Procedure, the Court cannot order counsel's retention (until twenty (21) days into the case). Nonetheless, for the reasons stated in the Retention Application and the papers in support therein (all of which I have reviewed), I request that the Order be entered retaining both firms.

## Certification

With respect to the factual information in the preceding motion, I certify under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: January 20, 2015
      Lake Placid, New York                          **/s/ Lisa Wint**
                                                          Head of School
                                                          National Sports Academy at Lake Placid